ARMOUR & COMPANY, PROSECUTOR, v. THE MAYOR AND ALDERMEN OF JERSEY CITY ET AL., RESPONDENTS.

Argued May 5, 1927—Decided August 15th, 1927.

Arrears of water rents determined by methods and calculations resulting in charges that are arbitrary, inaccurate, uncertain and speculative cannot be recovered from the consumer and such charges and the proceedings for their collection must be set aside. Citing *Lehigh Valley Railroad Co.* v. *Jersey City*, 5 *N. J. Adv. R.* 1171.

On *certiorari*.

Before Justices PARKER and CAMPBELL.

For the prosecutor, *John Milton*.

For the respondents, *Thomas J. Brogan* and *Stephen M. Egan, Jr.*

PER CURIAM.

The writ in this matter brings up for review proceedings on the part of Jersey City to sell lands of the prosecutor for arrearages of water rents based upon a certificate of the

director of the department of streets and· public improvements, filed with the city collector; the charges upon the books of the water department constituting such alleged arrearages and all proceedings thereon including the advertising of the lands for sale.

The return to the writ contains a copy of the statement of the water department and the advertisement of sale for arrears amounting with interest to $158,424.32.

The matter is in most respects similar to that of Lehigh Valley Railroad Co. v. Jersey City.

In the present case the prosecutor has been in the possession of the property since 1913 and was supplied with water by the city. The water was measured by eight meters, most of which including the one which is the subject of this con-·troversy having been installed by the owners and occupants of the premises preceding the prosecutor. One of these meters was known as a Hersey detector meter. On April 6th, 1921, the city commenced a test of this meter, continuing such test to November 21st, 1921, such test showing that the meter was registering from fifty-nine and two-tenths per cent. to six and fifty-four one-hundredths per cent., or an average of eight and seven-tenths per cent. of the water passing through it. On November 22d, 1921, the city entered a charge in its books and rendered a bill to the company for ninety-one and three-tenths per cent. deficiency covering the seven and one-half months that period and the entire period back to July, 1918, amounting to $27,701.64. In May, 1922, a further entry was made on the books of the city, and a bill for a further sum of $65,620.29 was sent to the company covering an alleged shortage from September, 1914, to July, 1918. This made a total charge and demand of $93,377.93 for water alleged to have been consumed and not registered, and therefore not paid for by the company from September, 1914, to April, 1921.

· The company paid the bill for water consumed during the test period—April to November, 1921—but refused to pay the charge of $93,377.93, and the amount being certified to the city collector as representing arrears of water rents the property of the company was advertised for sale.

The meter in question, as its name implies, is of the "detector" type, consisting of a straight line, six inches in diameter, called the main line, in which is inserted a weighted check valve designed to prevent or retard the flow of water through the main line. There is also a three-inch by-pass line in which a device is inserted for measuring and registering the quantity of water passing through that line. In the main line near the check valve is a small orifice five-eighths inches in diameter and a tell-tale meter which registers the flow through the small orifice, but nothing of the flow through the main line; its sole purpose being to disclose that water has passed through the main line. In ordinary use water passes through the three-inch by-pass line, the capacity of which is called the "breaking point," and which this is reached, water begins to flow through the main line, the volume being dependent upon the pressure and rate of flow to the city mains.

In this matter there are fifteen reasons for setting aside the tax and proceedings argued under six points as follows:

1. The theory upon which the city bases its claim is unsound.

2. The so-called test is unreliable.

    (a) The testing meters were unreliable.

    (b) Conditions during the test were not uniform.

    (c) The test was not thorough.

3. The conclusions drawn from the test are fallacious.

4. The city is estopped from now asserting its claim.

5. The claims upon the average bills are untenable.

6. The claims for interest are unjustified and erroneous.

In this matter, for the reasons set out in *Lehigh Valley Railroad Co. v. Jersey City, supra,* we have considered only reasons 1 and 3, and while the conditions in the present matter are different from those in the case just cited, the result reached by us upon the question of the uncertain and speculative character of the charges is the same.

Therefore, the charges and water rents and all proceedings thereunder, brought up for review, are set aside, with costs.